UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEY KATZ BROWN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSÉ, et al.,<br><br>Defendants. | Case No. 24-cv-00044-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 18 |

In this civil rights action, plaintiff Stacey Katz Brown alleges that the City of San José, along with Mayor Mahan and his chief-of-staff James Reed, violated her due process rights under the Fourteenth Amendment by disseminating false statements accusing her of leaking Mayor Mahan's planned vice mayoral nominee and denying her an opportunity to respond and clear her name. According to the complaint, defendants' conduct so stigmatized Brown as to prevent her from obtaining new employment. Defendants move to dismiss Brown's claims under Rule 12(b)(6), contending that she fails to state any valid causes of action. For the reasons that follow, the Court grants defendants' motion with leave to amend.

## BACKGROUND[1]

Plaintiff Stacey Katz Brown is a resident of Santa Clara County who "carved out a path of consummate achievement in both the public cand private sectors" in Silicon Valley before being appointed as the budget director for the Mayor of the City of San José, Matthew Mahan. Compl., Dkt. No. 1–2, 5, 14. Defendant City of San José is a municipal corporation located in the County of Santa Clara, California. *Id.* ¶ 8. Defendant Matthew Mahan, sued in his individual capacity, was elected Mayor of the City of San José in November 2022 and thereafter was an employee of the

---

[1] For the purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Ms. Brown's complaint.

City of San José. *Id.* ¶¶ 6, 20. Defendant James Reed, sued in his individual capacity, was appointed chief of staff to Mahan after his election in November 2022 and was an employee of the City of San José. *Id.* ¶ 8.

Brown alleges that she and Mahan finalized her role as budget director on December 6, 2022, and thereafter began her transition into the role. Compl. ¶¶ 22, 26. Brown alleges that on January 5, 2023, she attended a scheduled meeting at which Reed announced that Mahan's choice of vice mayor had been leaked to his political opponent Cindy Chavez and as a result the mayor was "irate." *Id.* ¶¶ 21, 31. Two days later, on a Saturday, Reed called Brown and informed her that "he had heard that she had leaked Mayor Mahan's vice mayor appointment to Supervisor Chavez," an accusation Brown "immediately and unequivocally" denied. *Id.* ¶ 33. Despite Brown's protests that she was not the source of the leak, the complaint alleges that Reed was unconvinced. Instead, he expressed that "there was no way forward" and placed her on administrative leave. *Id.* Shortly thereafter, Brown's cellphone was disconnected from the City's servers. *Id.* When Brown attempted to speak with Mahan the next day about the allegations and the impact on her reputation, Mahan "expressed his concern over the leak and stated that he would be deferring to Mr. Reed's 'judgment.'" *Id.* ¶ 34. Defendants provided Brown with "no opportunity to defend herself against this false accusation." *Id.* The following day, on January 9, 2023, Reed called Brown to inform her that "she could no longer work in Mayor Mahan's office" and denied Brown's express request to negotiate the terms of her exit. *Id.* ¶ 35. In the days and weeks following her termination, Brown alleges that she received calls from "concerned coworkers" and "from news reporters requesting to know whether the accusations were true." *Id.* ¶ 36.

Brown "alleges that both Mayor Mahan and Mr. Reed repeated the false accusation at City Hall and in the Silicon Valley political community at large." Compl. ¶ 37. Brown alleges that she "has sought other potential employment opportunities" but that, as a result of defendants' conduct, "[e]ach went nowhere however as word spread of her firing and the reasons for it." She alleges that she has "therefore been unable to obtain employment." *Id.*

On January 3, 2024, Brown filed suit against the City of San José, Mahan, and Reed,

alleging that defendants deprived her of a protected liberty interest without due process in violation of the Fourteenth Amendment.

Defendants move to dismiss Brown's claims for failure to state a claim pursuant to Rule 12(b)(6). Defendants first seek to dismiss Brown's claims against the individual defendants on the ground that she fails to plead facts showing that defendants publicly disseminated any stigmatizing charge sufficient to state a "stigma-plus claim," as well as on the basis of qualified immunity. Second, defendants seek to dismiss Brown's *Monell* claim against the City of San José because Brown has failed to plausibly allege a constitutional violation and fails to plead facts showing any official policy for which the City would be liable under a *Monell* theory.

## LEGAL STANDARD

Under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). The pleadings must nonetheless allege facts that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "can provide the complaint's framework," but the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 679

## ANALYSIS

"[T]o lodge a cause of action under § 1983, [Brown] must establish that Defendants, (1) acting under color of State law, (2) caused (3) Plaintiff[], as [a] U.S. citizen[] or person[] within the jurisdiction of the United States, (4) a deprivation of rights, privileges, or immunities secured by the Constitution and laws." *Chaudhry v. Aragon*, 68 F.4th 1161, 1171 (9th Cir. 2023).

Brown anchors her Section 1983 claim on alleged deprivations of procedural due process under the Fourteenth Amendment. Brown was an at-will employee with the City of San José and does not contend that she had any property interest in her particular position with the City. Rather, she alleges that defendants deprived her of a liberty interest—her ability to obtain employment in her chosen profession—without due process. Courts have recognized a narrow circumstance under which an individual's liberty interest in their "standing and associations in [the] community" can

trigger the requirements of due process. *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013) (cleaned up). "[T]he liberty interests protected by the Fourteenth Amendment are implicated only when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession. Stigmatizing statements that merely cause 'reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession' do not constitute a deprivation of liberty." *Id.*

"[T]o prove a deprivation of rights under § 1983 pursuant to a 'stigma-plus' due process claim, Plaintiffs must establish: (1) the public disclosure of a stigmatizing statement by a state actor; (2) the accuracy of which is contested; (3) plus the denial of some more tangible interest. Failure to establish any of these enumerated elements will defeat Plaintiffs' 'stigma-plus' due process claim under § 1983." *Chaudhry*, 68 F.4th at 1171.

## I. Brown fails to state a constitutional stigma-plus claim against Mahan and Reed.

To state a stigma-plus claim under the Fourteenth Amendment, the "stigma imposed must be severe and genuinely debilitating…. the stigma must seriously damage a person's reputation or significantly foreclose his freedom to take advantage of other employment opportunities." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992). "Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest, but less severe accusations must be analyzed on a case-by-case basis, and allegations of mere incompetence or inability are not sufficient." *Blantz*, 727 F.3d 917, 925 n.6 (9th Cir. 2013).

The Ninth Circuit has provided guidance as to the kinds of stigmatizing statements that do and do not implicate liberty interests. *Campanelli v. Bockrat*, for example, involved accusations against UC Berkeley's head basketball coach. 100 F.3d 1476, 1477 (9th Cir. 1996). After his termination, articles reported that the athletic director and vice-chancellor had fired him because he engaged in "profane and abusive" conduct:

> In claiming that the defendants' statements rose to the level of imposing stigma, Campanelli alleges, inter alia, that: Bockrath publicly stated 'the reason for Campanelli's firing was verbal personal abuse'; Boggan told the press Campanelli 'tore the kids down' and had put so much pressure on Jason Kidd, that Kidd became

4

> physically ill; and Washington Post writer Tony Kornheiser reported Bockrath's and Boggan's comments by calling Campanelli 'an abusive bully' who 'cursed his players incessantly,' and did psychological damage to the players. Through the newspaper articles appended to and incorporated into Campanelli's first amended complaint, Campanelli alleges, inter alia, that Bockrath described Campanelli's players as 'beaten down and in trouble psychologically.'

*Id. at* 1479 (cleaned up). The Ninth Circuit held that these allegations gave Campanelli "at least a fair chance of proving that the defendants placed a stigma on his name by signaling him out as a coach who crossed the line dividing acceptable from unacceptable behavior in coaching." *Id.* at 1480. This is because "a finder of fact could possibly construe the defendants' statements as accusing Campanelli not just of yelling and cursing at his players, but of engaging in a campaign of abuse devoid of any constructive purpose, calculated instead simply to inflict harm." *Id.* In so holding, the Ninth Circuit suggested that accusations that Campanelli yelled or cursed at players—while they might implicate Campanelli's character—would not alone be sufficient to support a claim that defendants stigmatized his name. Rather, it was "Campanelli's allegations that defendants charged him with deliberately abusing the 'kids' in his charge through incessant, malicious attacks that resulted in psychological damage" that "could be proven to constitute charges of immorality." *Id.*

Conversely, in *Hyland v. Wonder*, the Ninth Circuit held that accusations that a public employer accessed and disclosed confidential information were not sufficiently stigmatizing to implicate the Due Process Clause. *Hyland* involved accusations against a former volunteer with a city juvenile probation department. The plaintiff alleged that the juvenile hall director, after plaintiff's termination from the volunteer position, told a newspaper, "Just ask Hyland why he can't be a peace officer in the State of California" and contacted the governor demanding that the plaintiff's pardon be denied because "Hyland allegedly had unethically released to the public confidential information from juvenile court files." 972 F.2d at 1133. Accusations of this nature, the Ninth Circuit held, "[were] insufficiently egregious to activate the protections of the Due Process Clause." *Id.* at 1142. The Ninth Circuit approved the district court's reasoning that the "federal Constitution is not concerned with every insult hurled in the heat of an employment dispute." *Id.* According to the Ninth Circuit, although certain "charges may make [someone]

5

somewhat less attractive to future employers," this possibility was "not enough to implicate the Due Process Clause." *Id.*

As pleaded, the accusations against Brown were that she leaked the planned nominee for vice mayor to Mahan's political opponent after the election. Under *Campanelli* and *Hyland*, this accusation did not call Brown's character into question to a degree sufficient to implicate a protected liberty interest. Brown argues that the accusations against her suggested moral turpitude because charges that she leaked confidential information cast her as someone who could not be trusted. While such charges might implicate her character and trustworthiness generally, as in *Hyland* they are "not the types of charges of immorality, or dishonesty that can cripple an individual's ability to earn a living." *Hyland*, 972 F.2d at 1142. Indeed, the accusation that Brown leaked a planned vice mayor nominee after a political election is far less stigmatizing than the accusation that Hyland had accessed and released confidential juvenile records, and might very well be understood as a frequent occurrence in the rough-and-tumble world of politics. While defendants' statements may have made Brown "less attractive" to future employers, without more they do not implicate a liberty interest protected by the Due Process Clause.[2]

Brown's failure to plausibly allege that she was denied the opportunity to respond to any statement sufficiently stigmatizing to implicate a protected liberty interest defeats her 'stigma-plus' due process claim under Section 1983. *See Chaudhry*, 68 F.4th at 1171. Defendants' motion to dismiss Brown's claims against the individual defendants is therefore granted with leave to amend.

**II.    Brown fails to state a *Monell* claim against the City of San José.**

Stating a claim against a municipal entity under 42 U.S.C. § 1983 is proper when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v.*

---

[2] Defendants also move to dismiss Brown's claim against the individual defendants on the basis of qualified immunity. In anticipation of any amended complaint, the Court notes its agreement with defendants that Brown must plead facts supporting a claim that defendants could have reasonably concluded, on the basis of prior precedent, that the statements at issue and their subsequent dissemination triggered due process protections.

6

*Dept. of Soc. Servs. of City of N.Y*, 436 U.S. 658, 690 (1978). Plaintiffs must allege an injury *not* "inflicted solely by its employees or agents," but instead one caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent." *Id.* at 694.

Brown alleges that the City of San José is liable under Section 1983 because "defendant Mayor Mahan and defendant Mr. Reed acted under color of law when each deprived plaintiff of her Constitutional rights, and each had final policymaking and decision-making authority from the City of San Jose concerning their conduct, and each was acting as final policymakers and decision-makers for the City of San Jose at the time they were engaged in their conduct, and their conduct was so closely related to the deprivation of plaintiff's rights as to be a moving force that caused plaintiff's injury." Compl. ¶ 51. Additionally, she alleges that the City is liable because "defendants knew of plaintiff's rights and specifically made a deliberate choice to approve the deprivation of plaintiff's rights." *Id.* ¶ 52.

As pleaded, the complaint fails to state a *Monell* claim against the City of José for at least two reasons. First, Brown has failed to state a predicate constitutional violation for the reasons stated above. Second, even had Brown adequately stated an unconstitutional action for which the City could be liable, the complaint fails to plead adequate facts from which the Court could infer that the alleged action taken by defendants "implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by" the City's officers. *Monell*, 436 U.S. at 690. The complaint does not identify any particular policy, statement, ordinance, regulation, or decision of the City except for Reed's decision to terminate Brown's employment and Mahan's alleged deferral to that 'judgment.'

Brown contends that the basis for *Monell* liability is Mahan's ratification of Reed's decisions related to Brown's termination. Even if the complaint sufficiently pleaded that Mahan was the final decision-maker with respect to decisions to hire and terminate staff—which it does not—these facts would not be sufficient here, because the basis for the City's alleged liability is not Brown's termination itself but rather the making of and subsequent dissemination of the alleged stigmatizing statements without Brown receiving an opportunity to respond thereto.

7

Brown has pleaded no facts from which the Court can infer that Reed and Mahan acted according to City policy in making and disseminating the alleged stigmatizing statements without permitting her a further opportunity to respond.

Brown invokes the Ninth Circuit's holding in *Galbraith v. County of Santa Clara* for the proposition that "a bare allegation" is "sufficient to withstand a motion to dismiss." 307 F.3d 1119, 1127 (9th Cir. 2002). Her reliance on *Galbraith*, however, is misplaced, as *Galbraith* cannot survive the Supreme Court's holdings in *Twombly* and *Iqbal*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Iqbal*, 556 U.S. at 687 (2009). To state a claim for municipal liability under *Iqbal* and *Twombly*, Brown must plead facts that establish a plausible claim. *Id.* Conclusory allegations alone are insufficient.

Finally, Brown objects to defendants' inclusion of a provision of the San José Charter to support its motion to dismiss her *Monell* liability claim, alleging that the charter provision constitutes extrinsic evidence outside of the pleadings that cannot be considered on a Rule 12(b)(6) motion. The Court, however, may take judicial notice of this document. Fed. R. Evid. 201(b). While the Court will take judicial notice of the existence and contents of the document at issue, it will not take judicial notice of the underlying truth of any factual assertions therein. Additionally, the Court will not draw any conclusions or inferences therefrom, including that the version provided by defendants was the version of the charter in effect during the period relevant to Brown's claims.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted with leave to amend. Any amended complaint addressing the deficiencies in the complaint must be filed within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: September 11, 2024

P. Casey Pitts
United States District Judge